IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIC E. SUBER,

                                          Case No. 2:17-cv-863

      Petitioner,                      Judge Algenon L. Marbley
                                          Magistrate Judge Chelsey M. Vascura

      v.

WARDEN, MANSFIELD
CORRECTIONAL INSTITUTION,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Facts and Procedural History**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 3} On or about September 15, 2015, Appellant Eric E. Suber sold methamphetamine to a confidential informant, hereinafter "CI", working with the Central Ohio Drug Enforcement Task Force. The CI contacted Appellant via phone and arranged to meet him at 290 W. National, Newark, Licking County, Ohio. When the CI arrived at this residence, Appellant contacted someone named Shawn Moyer and asked him to bring the drugs to be sold. Moyer arrived at the residence, entered, and per the CI, handed the drugs to Appellant. Appellant then provided the CI with the drugs, in exchange for $800 in recorded buy money. The drugs were collected and tested by BCI and were found to be 11.87 grams of methamphetamine, a Schedule II controlled substance. Bulk amount for methamphetamine is 3 grams, so this amount exceeded the bulk amount, but was less than five (5) times bulk amount.

{¶ 4} Appellant was arrested in December, 2015. He was Mirandized and interviewed. He denied selling methamphetamine, but did admit to using methamphetamine.

{¶ 5} Appellant was indicted on one count of Aggravated Trafficking in Drugs, in violation of R.C. § 2925.03(A)(l)(C)(l)(c), a felony of the 3rd degree, punishable by a mandatory prison term of up to three (3) years in prison.

{¶ 6} Appellant had at least two (2) prior convictions for felony drug offenses. As charged in the single count of the indictment, the charge carried with it a maximum fine of $10,000, and a mandatory minimum fine of $5,000. Additionally, Appellant was subject to a driver's license suspension of between six (6) months and five (5) years.

{¶ 7} Appellant was tried before a jury on the 1st and 2nd days of March, 2016.

{¶ 8} At trial, the State put on evidence which consisted of audio recordings of the drug buy by the confidential informant "CI", and testimony by the police officers directing the buy. The CI did not appear at trial and could not be cross examined by Appellant.

{¶ 9} Following deliberations, the jury found Appellant guilty of Aggravated Trafficking in Drugs (Methamphetamine), in violation of R.C. § 2925.03(A)(I)(C)(1)(c), a felony of the third degree; and that the amount of Methamphetamine involved at the time of the offense was equal to or in excess of the bulk amount but less than five times the bulk amount.

{¶ 10} The trial court sentence Appellant to a mandatory prison term of thirty (30) months, running consecutively with the sentence in an unrelated case. No fine was imposed, and Appellant's driver's license was suspended for two years. Appellant was also sentenced to three years of post-release control.

{¶ 11} Appellant now appeals, assigning the following error for review:

ASSIGNMENT OF ERROR

{¶ 12} "I. APPELLANT'S CONSTITUTIONAL RIGHT TO CONFRONTATION WAS VIOLATED."

*State v. Suber*, No. 16 CA 14, 2016 WL 6392716, at *1-2 (Ohio App. 5th Dist. Oct. 26, 2016).

On October 26, 2016, the appellate court affirmed the judgment of the trial court. *Id.* On July 5,

2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Suber*, 149

Ohio St.3d 1464 (2017).

On January 17, 2017, Petitioner filed an application to reopen the appeal pursuant to Ohio

Appellate Rule 26(B). (ECF No. 16-1, PAGEID # 232.) Petitioner asserted that he was denied

the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim

that he was convicted in violation of the Fourth Amendment and denied the effective assistance

of trial counsel when his attorney stipulated to the contents of a laboratory report. (*See* Judgment

Entry, ECF No. 16-1, PAGEID # 260.) On April 28, 2017, the appellate court denied the Rule

26(B) application. (PAGEID # 258.) On July 26, 2017, the Ohio Supreme Court declined to

accept jurisdiction of the appeal. (PAGEID # 286.)

On October 5, 2017, Petitioner filed this Petition pursuant to 28 U.S.C. § 2254. He

asserts that he was denied the effective assistance of appellate counsel because his attorney failed

to raise on appeal a claim under the Fourth Amendment and failed to raise a claim that he was

denied the effective assistance of trial counsel when his attorney stipulated to the contents of a

laboratory report (claims one and two). It is the position of the Respondent that these claims are

without merit.

**Standard of Review**

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the

Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United

State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court" and emphasized that courts must

not "lightly conclude that a State's criminal justice system has experienced the 'extreme

malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16

(2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559

U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-

court rulings, and demands that state court decisions be given the benefit of the doubt." (internal

quotation marks, citations, and footnote omitted)).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and

forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated

on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be

correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision

was contrary to, or involved an unreasonable application of, clearly established federal law as

determined by the Supreme Court, or based on an unreasonable determination of the facts in light

of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013)

(citing *Slagle v. Bagley,* 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v.*

*Robinson,* 134 S. Ct. 513 (2013). The United States Court of Appeals for the Sixth Circuit has

summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L.Ed. 2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed. 2d 389.

*Id.* at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

**Ineffective Assistance of Appellate Counsel**

"In all criminal prosecutions," the Sixth Amendment affords "the accused ... the right ... to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted); (citing *Strickland*, 466 U.S. at 687), *cert. denied,* 135 S. Ct. 122 (2014). To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 687. "To

avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v.*

*Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, (2000); *Burger v. Kemp*, 483 U.S. 776 (1987) . . . . Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* . . . The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D.

Ohio Mar. 6, 2013). Factors to be considered in determining whether a defendant has been

denied the effective assistance of appellate counsel include:

> (1) Were the omitted issues "significant and obvious"?

> (2) Was there arguably contrary authority on the omitted issues?

> (3) Were the omitted issues clearly stronger than those presented?

> (4) Were the omitted issues objected to at trial?

> (5) Were the trial court's rulings subject to deference on appeal?

> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

> (7) What was appellate counsel's level of experience and expertise?

> (8) Did the petitioner and appellate counsel meet and go over possible issues?

> (9) Is there evidence that counsel reviewed all the facts?

> (10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes,* 171 F.3d at 427–28 (citations omitted).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington*, 562 U.S. at 105. The Court observed that, although "'[s]urmounting *Strickland's* high bar is never . . . easy,' . . . , [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id*. (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and citing *Strickland*, 466 U.S. at 689. The Supreme Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Petitioner asserts that his appellate counsel should have raised a claim under the Fourth Amendment, because the confidential informant who purchased drugs from the petitioner wore a monitoring device and also "planted" a listening device in the Petitioner's couch. The informant did not testify at trial, but the trial transcript indicates that she accidentally dropped one of the recording devices given to her by police onto Petitioner's couch during the drug transaction. (Transcript, ECF No. 16-2, PAGEID # 407.) When she realized that she had left the device in his home, she called him, described it to him as a small thumb drive, and returned to retrieve it. (PAGEID # 407-08.)

Sergeant Alan Thomas met the informant on September 15, 2015. She told him she could purchase a half ounce of methamphetamine from the Petitioner. (PAGEID # 425.) She called the Petitioner on her cell phone, and he said it would cost $800.00 for a half an ounce. (PAGEID # 429.) Thomas sent surveillance officers to the planned location of the drug exchange, at the 290 West National Drive apartments. (PAGEID # 430.) He gave the informant $800.00 of pre-recorded buy money and fitted her with two covert recorders so that police could hear her conversations being recorded during the drug buy. (*Id*.; 438.) The State played the recordings of conversations between the informant and the Petitioner at trial. (PAGEID # 455-58; 468-81.) About an hour and a half later, the Drug Enforcement Administration advised police that Sean Moyer was on his way to the apartment. (PAGEID # 442.) Moyer arrived and entered the apartment. (PAGEID # 443.) The informant thereafter exited the apartment and gave the narcotics she had purchased to the police. (PAGEID # 455.) She called the Petitioner and told him she dropped her thumb drive on the couch. He found it, and she returned to the apartment to get it from him. (PAGEID # 446.)

Petitioner also complains that his attorney stipulated that the State's Exhibit 5 contained the suspected drugs recovered by officers from the confidential informant on that date and that it had been weighed and analyzed by qualified analysts who, had they been called to testify, would have testified that the suspected drugs had been identified as methamphetamine, a Schedule II controlled substance, with a weight of 11.87 grams. (PAGEID # 452.) Petitioner argues that his attorney performed in a constitutionally ineffective manner by failing to require testimony from the laboratory analyst.

These claims plainly lack merit. "[T]he Fourth Amendment does not 'protect[] a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *United States v. Deleon*, No. 3:13-CR-161-PLR-HBG, 2014 WL 2999299, at *3 (E.D. Tenn. July 2, 2014) (quoting *Hoffa v. United States*, 385 U.S. 293, 302 (1966)). "[H]owever strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities." *United States v. White*, 401 U.S. 745, 749, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (plurality opinion). Further, "[t]he surreptitious transmission of a defendant's conversation in his home with an informant to monitoring Government agents does not violate the Fourth Amendment." *United States v. Hankins*, 195 F. App'x 295, 302-03 (6th Cir. 2006) (citing *On Lee v. United States*, 343 U.S. 747, 751-53 (1952)). Thus, the record does not indicate that Petitioner had any potentially meritorious claim under the Fourth Amendment.

Likewise, Petitioner cannot establish prejudice from his attorney's stipulation to admission of the lab report. *See Brown v. Romanowski*, No. 13-cv-11367, 2015 WL 4041300, at *14 (E.D. Mich. July 1, 2015) (no ineffective assistance of counsel based on counsel's stipulation to admission of lab report). Nothing in the record indicates that the substance Petitioner sold to the informant was not methamphetamine or that cross-examination of the lab analyst would have in any way undermined the conclusions of the report. Therefore, he has failed to establish the denial of the effective assistance of counsel on this basis.

Petitioner has failed to establish that the state appellate court unreasonably applied *Strickland*, or that its decision was based on an unreasonable determination of the facts in light of the evidence presented, so as to warrant relief.

**Recommended Disposition**

For the foregoing reasons, it is **RECOMMENDED** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

10